IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 19, 2012 Session

## STATE OF TENNESSEE v. MATTHEW BRIAN GRAHAM

**Appeal from the Circuit Court for Rutherford County**
**No. F-65687, F-66167    Don R. Ash, Judge**

_____

**No. M2011-01878-CCA-R3-CD - Filed October 10, 2012**

_____

The Defendant, Matthew Brian Graham, appeals the Rutherford County Circuit Court's order revoking his probation for one count of attempted child abuse and three counts of obtaining a controlled substance by fraud and ordering the remainder of his effective eight-year sentence into execution. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgement of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Luke A. Evans (at hearing and on appeal) and James T. Pinson (on appeal), Murfreesboro, Tennessee, for the appellant, Matthew Brian Graham.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; William Whitesell, District Attorney General; and Laural A. Hemenway, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

According to the revocation warrants, the Defendant's convictions were imposed on April 18, 2011. On June 22, 2011, a probation violation warrant was filed alleging that the Defendant violated four rules of probation by being arrested on charges of public intoxication and three counts of assault and by failing to make payments on his probation fees, court costs, or fines.

At the revocation hearing, Emily Williams testified that she supervised the Defendant's probation officer before the officer left that employment. Ms. Williams said she approved the warrant when it was issued. She said the Rutherford County "booking sheet" for June 11, 2011, reflected the Defendant's arrest for public intoxication and three counts of assault. She said that she met with the Defendant for his initial intake and that he was advised of the requirements and length of his probation. She said the Defendant's convictions in the present case resulted in a probation violation for an earlier offense. On cross-examination, she agreed that the probation rules the Defendant was accused of violating pertained to failing to obey the law, using alcohol to excess, not paying fees and costs, and engaging in assaultive or abusive behavior. She acknowledged that the Defendant had been accepted into a drug and alcohol treatment center for a ninety-day program and that there was space available for him in the program.

Sierra Booth testified that she was an acquaintance of the Defendant and that he knew friends of hers who had been at M.T. Bottle on the evening he hit her. She obtained an assault warrant against him after he hit her. She said that she was not involved in any arguments or fights with the Defendant. She said, however, that "a whole bunch of fights broke out with [the Defendant] and like four other people." She said that a bouncer "sat him down" outside and tried to calm him. She said that after the Defendant "settled down[,] . . . he got back up and started walking towards Thomas [Hartman]," whom she identified as M.T. Bottle's bouncer. She said that the Defendant turned toward her and hit her with his fist. She said the force of the blow knocked out a contact lens. She assumed the Defendant was drinking because her friends who were with him were drinking. She saw the Defendant grab Mr. Hartman by his neck and scratch his face. She said the Defendant "went after a guy named Ben" but did not touch him. She said the Defendant and "Chris went at each other" and that the Defendant and "Adam Brown went after each other."

On cross-examination, Ms. Booth testified that she did not drink and had not been drinking that night. She said that she saw Chris hit the Defendant. She said that "Thomas choked him out" by placing him in a headlock after the Defendant grabbed Mr. Hartman's neck. She said the Defendant "was fighting everybody in the bar" and that the fight started inside. She said that she was inside by the pool table when she became aware of the fight but that she did not know who started it. She said that when the Defendant struck her, he had been walking toward Mr. Hartman but that when he was about one-half the way there, he came toward her and hit her. She did not think the Defendant hit her accidentally because he stepped toward her to hit her. She said that the Defendant probably was "a little woozy" from the fight but that he appeared to walk straight. She said that the fights were one-on-one outside and that the Defendant started all the fights outside. She estimated that twenty minutes passed between the time the Defendant went outside and the arrival of the police.

She said that Mr. Hartman did not go outside until after the Defendant and Chris were outside.

On redirect examination, Ms. Booth testified that the Defendant grabbed Mr. Hartman's neck, who responded by grabbing the Defendant's neck, talking to him, and having him sit on the curb by the bar's entrance. She said that as Mr. Hartman walked away, the Defendant stood and started to follow but instead stepped to his left and hit her. On recross-examination, she said there were six or seven people in the parking lot.

Rutherford County Sheriff's Officer Stevens testified that he was dispatched to the M.T. Bottle bar and responded with five other officers. When he arrived, the Defendant walked toward him with blood on his face. He said the Defendant "seemed a little dazed," had a strong odor of alcohol on his breath, had dilated pupils, and had bloodshot eyes. He said that Thomas also walked toward him. He said that after patrons of the bar came outside and made statements to him, he asked the Defendant to sit in the back of his patrol car for safety. He said it was obvious that the other patrons were upset with the Defendant. He said he talked to Mr. Hartman, Ms. Booth, Christopher Chaffin, Jessica Curtis, and Laquinta Shoenfield. He identified Ms. Shoenfield as an M.T. Bottle employee. He said he arrested the Defendant for public intoxication.

On cross-examination, Officer Stevens testified that he did not charge the Defendant with assault that night. He explained that he did not witness the alleged misdemeanor assaults and that the complainants swore out the warrants themselves. He acknowledged that he did not do any blood alcohol testing on the Defendant. He said that Ms. Booth's testimony that there were only five or six people in the parking lot was inaccurate and that there were about twenty people. He said that based upon the Defendant's injuries, he first thought the Defendant had been "jumped." He said he did not see anything in disarray inside the bar. He said the strong odor of alcohol came from the Defendant's breath as the Defendant spoke to him. He acknowledged that it was "[v]ery possible" a person would have bloodshot eyes from being hit around the eyes and said the Defendant appeared to have been hit around the eyes.

The Defendant did not offer any proof. Before making its ruling, the trial court noted that the Defendant's plea agreement included language that if there was a probation violation, the Defendant agreed to serve his sentence. Defense counsel acknowledged this term of the plea agreement but argued that the court was not bound by the agreement. The trial judge said, "I agree. I think you're right." The court ruled:

> As [defense counsel] said I've got to find by a preponderance of the evidence that a violation has occurred. I'm going to find that

in fact that has been met certainly in regard to the assaultive behavior. And then secondly I think there was sufficient proof that he was in a bar. When the thing's called M.T. Bottle and the lady testified that there was drinking going on there. So I think there's sufficient proof of that. So finding all of that I'm going to find that he has in fact violated his probation. And then I've got options there to serve the original sentence, serve the entire probationary period again or add some additional time to his probation. And based upon his conduct I don't think he's a good candidate for probation. So I'm going to order you to serve your sentence, sir.

This appeal followed.

# I

The Defendant contends that the trial court erred in revoking his probation. The State counters that the revocation was proper. We agree with the State.

A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred. T.C.A. § 40-35-311(e) (2010). "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years. T.C.A. §§ 40-35-308(a), (c), -310; see State v. Hunter, 1 S.W.3d 643, 648 (Tenn. 1999). The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion. See State v. Williamson, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981).

The Defendant argues that the State failed to establish by a preponderance of the evidence that he committed the crime of assault and that he entered an establishment that had the primary purpose of serving alcohol. We disagree. The evidence demonstrates that the Defendant hit Ms. Booth with his fist without provocation or justification. Although there is no proof regarding earlier events inside M.T. Bottle, the proof shows that he initiated confrontations with other individuals in the parking lot and that he struck, scratched, or choked them. With respect to the type of business M.T. Bottle was, Ms. Booth and Officer Stevens referred to it as a "bar." The name M.T. Bottle suggests this as well. Ms. Booth testified that the Defendant's friends were drinking at M.T. Bottle and that she first saw the

fight inside as she stood by a pool table. The trial court did not err in finding that the Defendant violated the conditions of his probation.

## II

The Defendant contends that the trial court abused its discretion in ordering him to serve his sentence for his first probation violation and that the court erred in considering that his plea agreement included a waiver of an application for a suspended sentence if he violated his probation. The State contends that the trial court did not abuse its discretion in ordering the Defendant to serve his original sentence and that the Defendant has improperly challenged the voluntariness of his plea. We agree with the State that the trial court did not abuse its discretion, and we disagree with the Defendant that the trial court considered any purported waiver in reaching its determination.

The record reflects that the trial court noted that the guilty plea contained a waiver of an application for a suspended sentence if the Defendant violated his probation. The record reflects, however, that the trial court agreed with defense counsel that it was not limited by that waiver and should follow the provisions of the sentencing act in determining the proper consequence of the Defendant's violation.

Regarding the trial court's decision to order the Defendant to serve his sentence, we note that the evidence showed that the Defendant violated the terms of a previous sentence of probation by committing the offenses that led to the convictions in this case. We also note that the Defendant violated his probation in this case less than two months after beginning his eight-year probation sentence. The evidence demonstrates that he committed multiple criminal offenses on the evening in question. There was no proof that the Defendant acted in self-defense or that he would be successful if the court granted him a further reprieve. The trial court did not err in ordering him to serve his sentence.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE